HENRY C. GRIMM, PETITIONER, v. RAY ILIFF, DE-
FENDANT.

For the petitioner, *Nathan Rabinowitz.*

For the respondent, *Edward I. Croll.*

It appears that the petitioner was employed as a carpenter by defendant, at Pequannock, Morris county, and that either in April or May, 1927—the petitioner in his petition under oath gave the date of the accident as on May 27th, 1927, but in his testimony an amendment was had fixing the date as April 27th, 1927—while so employed fell from a scaffold approximately twelve feet high, by being struck by some shingles, which the wind blew, thereby causing him to lose his balance. The testimony was that he fell on his feet. This is established by two witnesses who were working with him, and his own testimony. It appears beyond question that he kept at his work, and worked for several days thereafter until the job was finished. In his testimony, he said that he had been in perfect health theretofore. He named, in the petition, Dr. Lang as having attended him—that was the only physician named in the petition; cross-examination disclosed that he had been under treatment for ailments by a Dr. Wiggins of Dover, and by a Dr. Nattress of Hoboken, the last named having treated him twenty times. It was also disclosed that Dr. Lang, Dr. Wiggins and Dr. Nattress were all chiro-practors—this also on cross-examination. In addition, he seems to have consulted on May 10th, 1927, Dr. Hutchinson,

of Pompton. Just before action was instituted, he was examined by Dr. McGuiness, of Paterson, and the latter was the only professional witness produced. The petitioner claimed loss of function of left hand and left foot, and permanent injuries. It developed on cross-examination that he had put up some screens in Pompton Lakes for ten days; that he had been maintenance man on Military Park Building, Newark, from May 23d to July 2d, 1927; that he had received $800 on a building contract in Pequannock, which he unconvincingly claimed was with a partner who had done all of the work, and that he drove his Ford car until January, 1928. An abundance of testimony from his own lips entirely disproved his recitals of incapacity, and showed that he had worked at his trade at all times when seasonal activities were present. His manner on the witness stand equally showed that he tried to bolster up a highly doubtful case. For instance, when he became stirred up, he gesticulated with his arms, although he had protested they were incapable of functioning. Throughout the case, it was manifest that he was not in good faith, and that the present action was oppressive and for revenge for having been ignored, although he had for nine months made no single gesture to establish in any form that he had a claim, the interval from April, 1927, until January 17th, when his claim was sworn to, having elapsed without a move to establish his pretended rights, or even to call attention to his injuries, if any.

I am constrained, therefore, to decide that petitioner is not suffering as claimed, and that there must be a verdict for respondent.

\*        \*        \*        \*        \*        \*        \*

HARRY J. GOAS,
*Deputy Commissioner.*